Minute Order Form (*6/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 7256 | **DATE** | 2/21/2003 |
| **CASE TITLE** | Richard Roe vs. Village of Westmont, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant's Rule 12(b)(6) motion has failed in its entirety and it is denied. (9-1) They are ordered to answer all of Counts II, III and IV on or before March 3, 2003.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | FEB 24 2003 | |
| | Notified counsel by telephone. | | date docketed | 20 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 2/21/2003 date mailed notice | |
| SN | courtroom deputy's initials | Date/time received in central Clerk's Office | SN mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RICHARD ROE, )
 )
        Plaintiff, )
 )
v. ) No. 02 C 7256
 )
VILLAGE OF WESTMONT, et al., )
 )
        Defendants. )

MEMORANDUM OPINION AND ORDER

Richard Roe ("Roe") has sued the Village of Westmont ("Village"), its Board of Fire and Police Commissioners ("Board") and Robert Maciejewski, Robert Scott and Robert Kovada (both individually and in their official capacities as Village employees), charging that he has been the victim of employment discrimination stemming from his infection with the human immunodeficiency virus ("HIV"). Defendants, at the same time that they have answered Count I of Roe's Complaint, have joined in a Fed. R. Civ. P. ("Rule") 12(b)(6) motion to dismiss Complaint Counts II (which asserts a Federal Rehabilitation Act claim), III (which is advanced under 42 U.S.C. §1983 ("Section 1983") as an equal protection claim) and IV (which raises a like equal protection claim under the Illinois Constitution).[1]

---

[1] This Court of course recognizes that Roe really has a single "claim for relief," even though he advances a number of theories of potential recovery on that claim (see the thoughtful explication of that subject in NAACP v. Am. Family Mut. Ins. Co., 978 F.2d 287, 292 (7th Cir. 1992)). But in this instance the parties' misuse of "claim" (an extremely common practice) not only will be indulged but will also be employed in this opinion

What follows in the Background section is a précis of Roe's Complaint, which must of course be taken as true for Rule 12(b)(6) purposes. In those terms all three of the challenged claims survive.

Background

About September 27, 2000 Roe, a police academy graduate who was already working as a police officer elsewhere, applied for a position as an officer with Westmont's Police Department ("Department"). About September 30 Roe took and passed the initial applicant screening tests: a physical ability test, a written exam and a written psychological test. About October 17 Roe interviewed with Board members, and soon after that the Board posted a list ranking all applicants, with Roe placed fourth out of the 15 remaining applicants.

After that posting but before it made any offers of employment, the Board required all remaining applicants to submit to medical examinations. About November 15 Roe took the examination at a clinic designated by defendants. Roe was told that the clinic had performed an HIV test but that the result was inconclusive. Soon after that, Roe took a voluntary HIV test at another clinic. Roe advised Board Commissioner Scott of the

---

(subject to the caveat contained in the preceding sentence), because it facilitates the discussion and analysis here to use that shorthand label as a proxy for the constant repetition of the more precise "theory of recovery" or the like.

results of both tests.

About February 15, 2001 Roe underwent another HIV test and medical examination, this time by a Board-selected physician. During a follow-up appointment the physician advised Roe that he had tested positive for HIV. Then the physician sent a letter to the Board confirming that Roe was HIV positive, but stating (1) that Roe was fully able to perform all duties required of him as a police officer and (2) that he did not pose a threat in performing those duties.

About a week later an attorney for Village told Roe that the Board might not be able to hire him because of his HIV situation. Then about March 5, 2001 Roe received a Board letter stating that he did not meet the necessary requirements for the position of police officer with Department and that his application would not be reviewed further. Since then the Board has hired at least five police officers and has continued its search for additional officers.

## Motion To Dismiss Standards

Courts may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with its allegations (Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)). In its analysis the court must accept all of a plaintiff's well-pleaded factual allegations as true, drawing all reasonable inferences in plaintiff's favor

(Johnson v. Rivera, 272 F.3d 519, 520 (7th Cir. 2001)).

## Federal Rehabilitation Act Claim

Count II alleges that defendants violated Federal Rehabilitation Act ("Act") §504, 29 U.S.C. §794,[2] (1) by requiring Roe to undergo medical examinations as part of his application before making an offer of employment and (2) by denying him employment because of his disability (Complaint ¶¶32, 33). Roe asserts that he is a qualified individual with a disability within the meaning of Act §705(20)(B)(Complaint ¶31).[3]

Defendants' Motion ¶3 seeks the dismissal of Count II because, even though Roe attempts to recover as a disabled person under the Act, they say that Roe's factual allegations portray him as a nondisabled individual. In that respect they point to Complaint ¶20, which refers to the doctor's view that Roe would be able to perform all duties required of him as a police officer.

Act §705(20)(B) defines an "individual with a disability" as any person who:

> (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities;

---

[2] Further citations to that statute will take the form "Act § --," using the Title 29 numbering rather than the Act's internal numbering.

[3] Roe incorrectly cites Act §706(8), which no longer exists, as the statutory section that defines a qualified individual with a disability.

4

(ii) has a record of such an impairment; or

(iii) is regarded as having such an impairment.

Because the Act's definition is almost identical to that under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12102(2), courts have construed both statutes similarly (see Bragdon v. Abbott, 524 U.S. 624, 642 (1998)). In fact Bragdon, id. at 642-45 actually looked to the consistent treatment under the Act of anyone who is HIV positive as being an "individual with a disability" to reach the same result for ADA purposes. Hence the factual portion of Roe's Complaint is entirely consistent with the Act's definition of an "individual with a disability."

Indeed, defendants would appear hard put to advance this branch of their argument in light of Roe's rejection for the job precisely because of his HIV-positive condition. That would quite clearly seem to bring the third statutory alternative ("regarded as having such an impairment") into play.

That last point really torpedoes defendants' position, for being evaluated by a doctor as qualified to work as a police officer is not at all inconsistent with having a "disability" as defined by the Rehabilitation Act. It will be remembered that the major life activity implicated in HIV-infected individuals is procreation, or even engaging in sexual relations (Bragdon, 524 U.S. at 642-43). Defendants' view that Roe could not be hired because he is HIV positive, a view acted on in the teeth of the

5

doctor's opinion giving Roe a clean bill of health in terms of his ability to do the job and the absence of any threats to others, can surely be considered as reflecting a different perception of his impairment--but still as considering it to be a disqualifying impairment. In short, defendants' motion to dismiss Roe's claim under the Act must be and is denied.

### Section 1983 Equal Protection Claim

Count III alleges in Complaint ¶43 that defendants violated Section 1983 because: "[a]cting under color of state law, Westmont Defendants classified and treated Roe differently because of his HIV infection, denying him employment on that basis." It goes on to assert that "Defendants have no sufficient justification for their discriminatory treatment of Roe."

Section 1983 requires Roe to make a two-tiered showing: that defendants were acting under color of state law and that their conduct deprived him "of rights, privileges, or immunities secured by the Constitution or laws of the United States" (Parratt v. Taylor, 451 U.S. 527, 535 (1981)). To state a viable equal protection claim, Roe must allege (1) that he is a member of a protected class, (2) that he is otherwise similarly situated to the members of an unprotected class, (3) that his treatment was different from that afforded to members of the unprotected class and (4) that in so doing defendants acted with discriminatory intent (McPhaul v. Bd. of Comm'rs, 226 F.3d 558,

564 (7th Cir. 2000)).

Defendants' Motion ¶3(b) urges that Count III be dismissed because Roe did not allege that he was treated differently from other candidates sitting for the same examination. In that respect defendants argue (1) that all applicants were subjected to the same medical testing at the same time during the application procedure and (2) that Roe does not allege that any other candidates were not HIV positive. That, they say, fails to meet the cited formula.

Unlike Roe's Count I and II claims under ADA and the Act, which focus on the medical examinations, Count III does not contain any reference to those examinations other than in its typical initial incorporation by reference of the earlier Complaint paragraphs. Count III alleges that Roe's right to equal protection was violated because defendants intentionally "classified and treated Roe differently because of his HIV infection, denying him employment on that basis" (Complaint ¶¶37, 43). That express allegation prevails over any contention based on other assertedly missing allegations.

To put the same point a bit differently, the requirements of notice pleading are no more demanding than what Roe's counsel have set out (Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 165, 168-69 (1993)). Because it is surely a permissible inference from Roe's allegations that he

7

was treated "differently because of his HIV infection" (Complaint ¶37) that other applicants who were hired were not HIV positive (see Kiser v. Naperville Cmty. Unit, 227 F.Supp.2d 954, 972 (N.D. Ill. 2002)), defendants' motion as to Count III is also denied.

## Illinois Constitutional Claim

Count IV asserts (perhaps needlessly) that defendants also violated Roe's right to equal protection under the Illinois Constitution on the same premise that forms the gravamen of Roe's federal claim of the same nature. Indeed, unless there is some indication of a different substantive content being ascribed to the two constitutional guaranties, this provides a good example of the mischief often engendered by the flawed approach referred to in this opinion's n.1.[4]

Not to be outdone, defense counsel launches a totally irrelevant qualified immunity attack based entirely on the federal law that applies to federal constitutional claims against state officers. That type of muddied thinking has been rejected for nearly a quarter century--as Justice Stevens put the matter succinctly for a unanimous Supreme Court in Ferri v. Ackerman, 444 U.S. 193, 198 & n.13 (1979)(citations omitted):

---

[4] In fact, because 42 U.S.C. §1988 provides for an award of attorneys' fees to a successful Section 1983 plaintiff while there is no corresponding provision under Illinois law, it is especially difficult to understand why anyone would want to pursue a substantively identical claim of violation of an Illinois constitutional guaranty.

8

> For when state law creates a cause of action, the State is free to define the defenses to that claim, including the defense of immunity, unless, of course, the state rule is in conflict with federal law.
>
> \*       \*       \*
>
> When federal law is the source of the plaintiff's claim, there is a federal interest in defining the defenses to that claim, including the defense of immunity. That interest, of course, is not present in a case, such as this, arising under state law.

And the principle is alive and well today--contrast the immunity analysis accorded to federal constitutional claims in Smith v. City of Chicago, 242 F.3d 737, 742-43 (7th Cir. 2001) with the same case's treatment of immunity as to state-law-based claims (id. at 744). To the same effect, see this Court's decision in Robinson v. Gerritson, 210 F.Supp.2d 1004, 1009, 1013 (N.D. Ill. 2002)).

In short, defendants have come up empty once again. This last branch of their Rule 12(b)(6) motion is also denied.

## Conclusion

Defendants' Rule 12(b)(6) motion has failed in its entirety. They are ordered to answer all of Counts II, III and IV on or before March 3, 2003.

_____
Milton I. Shadur
Senior United States District Judge

Date: February 21, 2003

9